*990 OPINION.
Kern:
This case presents the question of whether the basis for ascertaining the amount of depreciation of the property of the petitioner should be the value of these assets while they were held by the Hex Manufacturing Co., or their value at the date of their acquisition by petitioner. It is the contention of petitioner that it acquired these assets as a result of a reorganization within the meaning of the Revenue Act of 1928, and that immediately after the transfer to it an interest or control in such property of 50 percent or more remained in the same persons.
The provisions of the statute which are pertinent are section 112 (i) (1) of the Revenue Act of 1928, and sections 113' (a) (7) and 114 (a) of the Revenue Act of 1932, which are set forth in the margin.[1]
Since we are of the opinion that immediately after the transfer of the assets here involved from the Rex Manufacturing Co. to petitioner an interest or control in such property of 50 percent or more did not remain in the same persons or any of them within the meaning of section 113 (a) (7) of the Revenue Act of 1932, we do not consider it necessary to decide whether a reorganization took place within the meaning of section 112 (i) (1) of the Act of 1928, *991 but shall merely assume that it did for the purpose of this discussion. We are aware that counsel for petitioner has asked for our decision on this question, regardless of our decision as to the construction of section 113 (a) (7) of the Act of 1932, but we refrain from so doing because of the fact that this phase of the case was not considered in respondent’s brief.
Petitioner contends that, since an interest or control in petitioner of more than 50 percent was in former stockholders of the Rex Manufacturing Co., the basis should be the same as it was in the hands of that company, even though these stockholders owned less than 50 percent of the stock of the Rex Manufacturing Co. Petitioner rests this contention on language used by the Circuit Court of Appeals for the Seventh Circuit in the case of Fairbanks Court Wholesale Grocery Co. v. Commissioner, 84 Fed. (2d) 18. However, that case as well as the case of Monarch Electric & Wire Co. v. Commissioner, 38 Fed. (2d) 417, also cited by petitioner, involves a different question from that presented here, as petitioner frankly recognizes by his statement that the precise point urged by the respondent in this case does not appear to have been presented in any decided case. Therefore, we feel it necessary to consider the language of the statute itself as applicable to the present case. The words of the statute are: “If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 percent or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.” We take this to mean that after the transfer an interest or control in such property of 50 percent or more must remain in the same persons or any of them who collectively, but not necessarily in the same individual proportion, held at least 50 percent of interest or control in the property of the transferor corporation. This seems to us to be the plain meaning of the statute and should not be affected by any surmise as to legislative intent cpntained in the opinion of the court in Fairbanks Court Wholesale Grocery Co. v. Commissioner, supra.
Out of 4,500 shares of the stock of the petitioner which were outstanding, 3,500 were owned by former stockholders of the Rex Manufacturing Co. These stockholders were C. C. Hull, George W. Ansted, Matthew R. Hull, and Nellie Ansted Huston, and collectively they owned 4,875.55 shares of the 10,000 shares of preferred stock and 4,765.55 shares of the 10,000 shares of the common stock of the Rex Manufacturing Co. Reduced to percentages, these stockholders owned 48.75 percent of the preferred stock and 47.65 percent of the common *992 stock of the Eex Manufacturing Co., or 48.20 percent of all of its outstanding stock.
Petitioner contends that if the above construction of the statute is made by us, nevertheless, it should be considered that more than 50 percent of the interest or control in the property of petitioner remained in persons who collectively held more than 50 percent of the interest or control in the property of the Eex Manufacturing Co., and bases this contention on the fact that George W. Ansted, who held stock in both the petitioner and the Eex Manufacturing Co., was administrator of the estate of his mother, Catherine Ansted, who held 666.68 shares of Eex Manufacturing Co. stock, and the fact that James M. Heron, who owned 2,900 shares of the stock of that company, owned, after the transfer of its property to petitioner, first mortgage bonds of the petitioner in the amount of $10,000.
Petitioner, in its brief, takes the position that, since George W. Ansted was administrator of the estate of Catherine Ansted, either he must be considered as owning her stock in the Eex Manufacturing Co., or he and his sister, Nellie Ansted Huston, as heirs of Catherine Ansted. The obvious difficulty of this position is that the stock of Catherine Ansted belonged during the taxable year to her estate, and George W. Ansted held the stock not individually, but in a purely representative capacity, while the ultimate beneficial interest in such stock, which might be in George W. Ansted and Nellie Ansted Huston, would depend upon, whether there were other heirs at law, whether there was a will (he might have been administrator c. t. a.), and whether the other assets of the estate, if any, were sufficient to pay the obligation of the estate, if any. There is no evidence in the record on these questions and, therefore, no proof of such beneficial interest in the stock of Catherine Ansted in the Eex Manufacturing Co. being in George W. Ansted and Nellie Ansted Huston.
Petitioner’s contention that James M, Heron had an interest or control in the property of the petitioner by virtue of his ownership of first mortgage bonds of petitioner is answered in petitioner’s own brief, in which it is stated that “the phrase ‘interest or control’ as used in the reorganization provisions of the Eevenue Acts means the per cent of stock owned.” Petitioner then cites Evans Products Co., 29 B. T. A. 992, and Keen & Woolf Oil Co. v. Commissioner, 49 Fed. (2d) 45.
We must, therefore, conclude that the former stockholders of the Eex Manufacturing Co. who held 77.8 percent of the stock of petitioner immediately after the acquisition by petitioner of the property formerly owned by the Eex Manufacturing Co., held before the transfer only 47.65 percent of the common stock and 48.75 percent of the preferred stock of the Eex Manufacturing Co., and, therefore, the provisions of section 113 (a) (7) of- the. Eevenue Act of 1932 do not *993 apply to the situation presented by this case, and, as covered by the stipulation of the parties, in the event 'of such finding, the proper depreciation deduction for the year 1982 is $6,182.69.

Decision will he entered u/nder Bule 50.

 SEC. 112. RECOGNITION OF GAIN OR LOSS.
*******
(i) Definition of reorganization. — As used in this section and sections 113 and 115—
(1) The term “reorganization” means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.
SEC. 113. adjusted BASIS FOR DETERMINING GAIN OR LOSS.
(a) Basis (unadjusted) of Property. — The basis of property shall be the cost of such property; except that—
* # * * * *
(7) Transfers to Corporation Where Control of Property Remains in Same Persons. — If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon. such transfer under the law applicable to the year in which the transfer was made. This paragraph shall not apply if the property acquired consists of stock or securities in a corporation a party to the reorganization, unless acquired by the issuance of stock or securities of the transferee as the consideration in whole or in part for the transfer.
SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.
(a) Basis for Depreciation. — The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 113 (b) for the purpose of determining the gain or loss upon the sale or other disposition of such property.